NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELIX ROSARIO and MARIA ELENA ROSARIO,<br><br>    Plaintiffs,<br><br>v.<br><br>MANNY CARILLO, et al.,<br><br>    Defendants. | Civil Action No.: 08-cv-4495<br><br>**OPINION** |

**SHERIDAN, U.S.D.J.**

  This matter is before the court on Felix Rosario and Maria Elena Rosario's (individually, "Mr. Rosario" and "Ms. Rosario," and collectively, "Plaintiffs") motion for summary judgment ("Plaintiffs' Motion for Summary Judgment"). On August 25, 2009, Plaintiffs filed an amended complaint ("Plaintiffs' Amended Complaint") against Defendants Manny Carillo ("Mr. Carillo"), et al. ("Defendants") in which Plaintiffs allege that Defendants: (1) violated Plaintiffs' federal and state constitutional rights, (2) falsely arrested and imprisoned Mr. Rosario, (3) maliciously prosecuted Mr. Rosario, (4) assaulted and battered Mr. Rosario, (4) tortiously invaded Plaintiffs' privacy, (5) intentionally inflicted emotional distress upon Plaintiffs, and (6) conspired to commit five afore-mentioned offenses.

  For the reasons set forth below, this court denies Plaintiffs' Motion for Summary Judgment.

# I

On September 9, 2006, Plaintiff Mr. Rosario visited his girlfriend, Jasmine Hernandez ("Ms. Hernandez"), at her mother Esther Lee's ("Ms. Lee") home. Ms. Hernandez met Mr. Rosario outside the home, and soon an argument ensued between the two. Mr. Rosario decided to take his anger out on Ms. Lee's car by kicking the rear quarter panel and smashing the rear windshield with a metal pipe. After Mr. Rosario drove away, Ms. Lee or her boyfriend, Mr. Carillo, a Newark police officer who resides at the same residence, contacted the local police. The local officers arrived and took a statement from Ms. Hernandez.

The officers returned to the police station to take statements and complete domestic violence paperwork. Ms. Hernandez and her mother drove to the police station intending to complete the domestic violence paperwork. For approximately the next 20 minutes, Mr. Rosario sent Ms. Lee a series of obscene text messages, including the following: "Let me hit that," "Do you fuck for rent? I got money," "You can't lock me up because you suck a cop's dick, ha, ha, lol," and "Take me to court, you slut, lol." When Mr. Carillo learned of these text messages, he called the Newark police, informing them that he was going to go to Ms. Rosario's home. Mr. Carillo also told the Newark police that it should send a unit to Ms. Rosario's home since Mr. Rosario damaged Ms. Lee's car, sent obscene text messages, and threatened to burn Ms. Lee's home.

Defendants Jose Ferriera, Wayne Pugh, Jeanette Burgos, and Robert Leonard, arrived at Ms. Rosario's home. After speaking with Mr. Carillo, Officer Burgos went to the rear of the home in case Mr. Rosario attempted to escape. Officer Ferriera or Officer Pugh knocked on the

front door of the home. Ms. Rosario answered the door, and Officer Ferriera gave his account of the exchange that ensued:

> Q. What happened after she opened the door?
>
> A. We asked for Felix. She pointed to her right. She said he's in there.
>
> Q. How did you ask for Felix?
>
> A. Where is Felix or is Felix home, something like that.
>
> Q. What did she say?
>
> A. He's in there.
>
> Q. So she basically acknowledged that he was home?
>
> A. Yes.
>
> Q. Did you ask her for permission to enter the house?
>
> A. No.
>
> Q. Did she give you permission to enter the house?
>
> A. Yes. When she pointed and said he's in there.
>
> Q. But you didn't ask her for permission to enter the house?
>
> A. No.
>
> Q. So you took her response to your question where is Felix as permission to enter the house?
>
> Mr. Lipshutz: Objection.
> Mischaracterizes his testimony.
>
> Q. What was your understanding? You obviously acted upon it, so you took her answer to your question where is Felix as permission to enter the house?
>
> A. Yes.
>
> Q. And did you have any problems entering the house?

A. No.

Officer Pugh also describes the interaction with Ms. Rosario:

Q. After you spoke to the Lieutenant Carillo, what did you do?

A. We went and knocked on the door.

Q. When you say "we," who are we talking about?

A. Myself and Officer Ferriera.

Q. Were Officers Burgos and Leonard with you when you went to knock on the door?

A. I don't recall.

Q. Do you remember which one of you two, you or Jose Ferreira, actually knocked on the door?

A. No, I don't.

Q. Do you remember who was in front of whom as you approached the house?

A. No, I don't.

Q. What happened when one of you knocked on the door?

A. A lady answered the door.

Q. Did you speak to her?

A. One of us did, yes.

Q. Do you remember if it was you or if it was Officer Ferriera?

A. No, I don't.

Q. What did either you or Officer Ferriera say to the lady?

A. I can only imagine that we asked for Felix.

Q. How did you ask for Felix?

A. I don't recall.

>Q. What was her response to your asking for Felix?
>
>A. Initially, I don't recall, but she told us that he was in the back room. I don't remember her initial response.
>
>Q. Then what did you do?
>
>A. After she told us where he was, we walked in to where she pointed and started talking to him.
>
>Q. Did you ask him [her] for permission to enter the house?
>
>A. She let us in.
>
>Q. Did you say, "Ma'am, can we come in?"
>
>A. I don't recall if we did or not.
>
>Q. Did Felix ever come to the door?
>
>A. No.

Ms. Rosario gave a very different account of the interaction:

>Q. But the screen door was open?
>
>A. He opened it.
>
>Q. How do you know?
>
>A. Because he was holding it with his back.
>
>Q. And he's screaming?
>
>A. Sure, yes.
>
>Q. And you opened – what did you tell the officers after they asked you if Felix was in there?
>
>A. But before I removed the chain, I told them, because Jennifer told me to ask them, "Do you have a paper with a warrant to come get him? And they answered, "We are the

police, we don't need any," with bad words, "any fucking papers, we do whatever we want. Open the door or we're going to break it."

Q. So you asked to see the warrant before you opened the door?

A. Yes.

Q. And the officer -- are they screaming this?

A. Sure, yes, with bad words.

Q. They're screaming, we're the police, we could do anything we want, open the fucking door?

A. Yes.

Q. Okay. And what did you do?

A. Well, you can imagine they were going to knock the door down, so I removed the chain. And they didn't even wait for me to move away from there, they pushed me.

Q. What happened? Tell me. I don't know.

A. I fell. But I stood up quickly.

Q. Who pushed you?

A. The two of them.

Q. Show me. Which ones?

A. These two came in first.

Q. So P-12?

A. And P-11.

Q. These two officers?

A. Yes.

Q. Did you open -- did you open the door?

A. I was just removing the chain when they pushed me with the door and everything in.

Q. They pushed the door in?

A. Yes. And they pushed me like over here (indicating). From my chest they pushed me.

Q. Where did they push you, what part of your body?

A. Like on my chest.

Q. And which one pushed you, which officer?

A. The two came in, flying in.

Q. And knocked you down?

A. Yes.

Q. And they pushed you on the chest?

A. Yes.

Q. Anywhere else?

A. No, They flew right in to get Felix.

After the discussion, Officer Pugh and Ferriera apparently entered the home. Both officers admitted that – without Ms. Rosario's permission – they would not have entered since it would have been illegal and there was no emergency to enter the home. A physical altercation soon ensued between the two officers and Mr. Rosario. One of the officers used pepper spray on Mr. Rosario, and all four officers eventually used physical force to subdue and arrest Mr. Rosario.

## II

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists only if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Such a fact is considered material only if the fact may affect the outcome of the

litigation based upon the substantive law. *Ibid.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

After a party files a motion for summary judgment along with supporting papers, the non-moving party "must produce specific facts showing that there is a genuine issue for trial." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985) (citation omitted). "[U]nsupported allegations... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (*citing* Fed. R. Civ. P. 56(e)).

Plaintiffs seek summary judgment on all eight counts of Plaintiffs' Complaint. In particular, Plaintiffs contends that summary judgment is warranted because Officer Ferriera and Officer Pugh allegedly violated Plaintiffs' Fourth Amendment rights by entering Ms. Rosario's home without a warrant or consent.

## III

The Fourth Amendment to the United States Constitution provides in pertinent part:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

As such, it is well-established that the police must obtain a warrant before entering a residential home in order to arrest the suspect. *Payton v. New York*, 445 U.S. 573, 576 (1980); *see also United States v. Burton*, 288 F.3d 91, 102 (3d Cir. 2002) ("A search warrant, supported

by probable cause, is normally necessary before law enforcement may lawfully search a person's property."). A warrant is not required, however, where "[a] search [] is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *see also Beatty v. Twp. of Elk*, 2010 WL 1493107, at *6 (D.N.J. Apr. 14, 2010) ("[A] well-established exception to the warrant requirement is consent.") (citation omitted).

"The government has the burden of proving, through 'clear and positive testimony' that the consent to search was given voluntarily." *United States v. Santos*, 340 F. Supp. 2d 527, 538 (D.N.J. 2004). "Consent is voluntary when it is unequivocal, specific, and intelligently given, uncontaminated by any duress or coercion." *Ibid.* "Consent to a search is determined by examining all the circumstances...." *United States v. Crandell*, 554 F.3d 79, 88 (3d Cir. 2009) (citation omitted).

Two important factors in the "totality of the circumstances" analysis are the setting in which the consent was obtained and the parties' verbal and non-verbal actions. *Ibid.* (citations omitted). Consent can be inferred from words, gestures, and other conduct. *Reppert v. Marino* 259 Fed. App'x 481, 492 (3d Cir. 2007).

# IV

Defendants have successfully created a genuine issue of material fact as to whether Plaintiff consented to Defendants' entry. In particular, a genuine issue of material fact exists as to whether Plaintiff's pointing qualifies as a showing of consent. If it is decided that consent was provided, there is also a genuine issue of material fact of whether the consent was given voluntarily, or whether it was the product of duress or coercion, express or implied, which would require the court to determine based on the totality of all the circumstances. *Schneckloth,* 412 U.S. at 227.

As stated previously, a totality of circumstances analysis requires the court to consider the setting in which the consent was obtained and the parties' verbal and non-verbal actions. *Crandell,* 554 F.3d at 88. Consent can be inferred from words, gestures, and comments. *Reppert,* 259 Fed. App'x. at 492. Ms. Rosario allegedly told the police officers that her son was in her home, and pointed to his location. An impartial jury must decide whether these actions constitute consent. A reasonable fact finder could potentially conclude that Ms. Rosario "voluntarily opened the door when the police knocked, pointed out where Mr. Rosario was, and let the officers in ... [and] a reasonable fact finder could easily conclude that Ms. Rosario, by her words, actions, and gestures, gave Officers Ferriera and Pugh a reasonable belief that she consented to their entry."

Similar to the circumstances at issue here, a number of courts have denied motions for summary judgment in circumstances in which a genuine issue of material fact existed regarding whether a plaintiff's verbal and non-verbal actions constituted consent to a warrantless entry. *Beatty,* 2010 WL 1493107 at *1 (D.N.J. Apr. 14, 2010); *McLain v. Milligan*, 847 F. Supp. 970, 975 (D. Me. 1994); *Kirley v. William*, 2007 WL 543032, at *1 (W.D. Pa. Feb. 16, 2007). In *Beatty*, the District of New Jersey denied a plaintiff's motion for summary judgment for a Fourth Amendment Violation claim. 2010 WL 1493107 at *1. The plaintiffs alleged that defendants, which included police officers and the mayor, entered and searched the plaintiffs' home without a warrant or his consent. *Id.* at *2. A police officer, on the other hand, contended that Mr. Hampton told the officers that they could enter his home. *Ibid.* Overall,

> the heart of dispute [was] that the [] officers believed they had consent to enter the home, and once inside, they discovered a potential health and safety issue that justified further investigation by [Defendant] Mayor Rainey. Plaintiffs of course counter[ed] that Hampton never gave consent to enter to the officers, and definitely did not give consent to Mayor Rainey. Plaintiffs further argue[d] that even if Hampton gave consent, it was not voluntary.

10

*Id.* at *6

The court recognized that there were genuine issues of material fact regarding consent and therefore denied plaintiffs' motion for summary judgment:

> As to [Police officers and Defendants] Garrison, Przybyszweski, Molinari, and Pierson, the Court finds that genuine issues preclude summary judgment. Garrison directly testified that Hampton told the officers they could come in. Hampton flatly refutes that contention. Under these circumstances, the Court cannot weigh evidence to determine which party correctly represents the facts. Therefore, Plaintiffs' Motion must be denied as to the purported search by Garrison, Przybyszewski, Molinari, and Pierson.

*Ibid.*

In *McLain*, the District of Maine denied a defendant's motion for summary judgment on a Fourth Amendment violation claim. 847 F. Supp. at 975. The police officer and the defendant Milligan claimed that he had received consent to enter plaintiff's apartment. *Ibid.* Plaintiff's roommate, Shannon, on the other hand, claims that she did not consent by voice or gesture to the officers' entry into the apartment. *Ibid.* Shannon claims that although she told the police officers' the location of the guests after they asked, and that she lead them to their location, she did not give consent for the officers to enter. *Ibid.* The major fact in dispute was "whether Shannon made any gesture or verbal signal that could be read as indicating her consent to their entry" *Id.* at 976. Since a genuine issue of material fact remained, the District Court denied defendant's claim for summary judgment:

> the resolution of these disputed facts is essential for conducting the qualified immunity inquiry of whether any reasonable officer could view Defendant's actions as lawful, given the circumstances and the clearly established law governing warrantless entry into a home. Consequently, Defendant Milligan is not entitled to summary judgment on the claim, in Counts IX and X, alleging that his entry into Plaintiff's home violated the Fourth Amendment.

*Ibid.*

In *Kirley*, the Western District of Pennsylvania denied defendants' motion for summary judgment for a Fourth Amendment violation. 2007 WL 543032 at *1. Defendant and police officer Williams allegedly entered plaintiff Kirley's home and allowed the plaintiff's son to enter her home without a warrant. *Ibid.* The District Court decided that there was still a genuine issue of material fact "as to whether the key players in the search acted in a manner as alleged such that the legal conclusion could be drawn that the officers had consent to enter Kirley's home pursuant to the apparent authority doctrine." *Id.* at *8.

Plaintiffs cite a number of cases in support of their motion for summary judgment, including *United States v. Slusser*, 270 F. 818 (S.D. Ohio 1921), *Johnson v. United States*, 333 U.S. 10 (1948), and *State v. Rice*, 115 N.J. Super. 128 (App. Div. 1971). In *Slusser*, federal prohibition officers and municipal police officers entered Slusser's home to look for contraband liquor. 270 F. 818. The District of Ohio suppressed the evidence obtained during the search because the officers conducted the search without a warrant or consent from defendant Slusser. *Id.* at 821. This court is not particularly persuaded by *Slusser*. First, *Slusser* is a case decided by the District of Ohio in 1921, which is not binding on this court. Second, the Court's decision to suppress evidence in a criminal trial to convict Slusser is unrelated to this case, which deals with a summary judgement motion in a civil action against the police officers. In a criminal trial, the jury must make a decision based on the facts and evidence of the case. For a summary judgment motion to succeed, the moving party must satisfy a higher burden and demonstrate that there are no genuine issues of material fact and that no reasonable jury could rule in favor of the non-moving party. *Anderson,* 477 U.S. at 248.

In *Johnson,* federal narcotics officers detected odors of burning opium, entered Johnson's hotel room, and found the opium. 333 U.S. at 12. The Supreme Court decided to suppress all

evidence obtained from Johnson's hotel room because the narcotics' officers lacked a warrant, and odors of opium did not provide probable grounds for a search by the police officers. *Id.* at 13. As with *Slusser*, *Johnson* deals with a criminal trial, in which the Court decides to suppress evidence. It has minimal relevancy in the case at hand because at issue here is a plaintiff's motion for summary judgment, which requires Plaintiff to satisfy a different burden and show that there are no genuine issues of material fact. Also, in *Johnson*, none of the exceptional circumstances for a search without a warrant applies, while there is strong evidence of consent in the case at hand.

In *Rice*, defendant Rice sought to have the evidence obtained by police officer McCummins suppressed because he had illegally entered defendant's apartment. 115 N.J. Super. at 132. The court decided in defendant's favor because the police officer entered without a warrant or consent because he simply walked in defendant's apartment without any effort to seek consent. *Id.* at 131. *Rice* has minimal connection to the instance at hand because the officers' did not simply enter into Ms. Rosario's home, but taking the facts most favorable to non-moving parties, Defendants' sought permission and received implied consent to enter.

## V

For the reasons set forth above, this Court denies Plaintiffs' Motion for Summary Judgment.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

July 29, 2011