<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| FELIX ROSARIO and MARIA ELENA ROSARIO,<br><br>Plaintiffs,<br><br>v.<br><br>MANNY CARILLO, ROBERT LEONARD, WAYNE PUGH, JOSE FERRIERA, J. BURGOS, NEWARK POLICE DEPARTMENT, CITY OF NEWARK, JOHN DOES 1-10, and ABC CORP. 1-10,<br><br>Defendants. | Civil Action No.: 08-4495<br><br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

The matter comes before the Court on a motion in limine from defendants City of Newark, Lt. Manuel Carrillo, Officer Wayne Pugh, Officer Jose Ferreira, Officer Jeanette Burgos, and Officer Robert Leonard (collectively, "Defendants") requesting (1) admission of plaintiff Felix Rosario's alleged statement to his girlfriend Jasmine Hernandez, and (2) exclusion of the video of defendant Officer Wayne Pugh.

For the reasons stated below, Defendants' motion is granted.

**I.**

Since the Court writes solely for the benefit of the parties, only a brief summary of the most relevant facts follows.

The first issue involves the events surrounding the initial altercation between Felix Rosario and Jasmine Hernandez. On September 9, 2006, at about 11:00 p.m., plaintiff Mr. Rosario visited

his girlfriend, Ms. Hernandez, at her home located in Belleville, N.J. (the "Belleville home"). At the time, Ms. Hernandez was living with her mother, Esther Lee, her two younger sisters, and Ms. Lee's boyfriend, Newark Police Lieutenant Manuel Carrillo. Ms. Hernandez met Mr. Rosario outside the Belleville home while Ms. Lee and Lt. Carrillo slept inside.

An argument ensued between Ms. Hernandez and Mr. Rosario. The argument became heated, and Mr. Rosario took his anger out on Ms. Lee's car, which was parked in the driveway of the Belleville home. Mr. Rosario caused extensive damage to Ms. Lee's car by kicking the rear quarter panel and smashing the rear windshield with a metal pipe. Plaintiffs allege that, during this altercation, Mr. Rosario threatened Ms. Hernandez, stating "I don't give a shit about you, I'll burn your house down." After the altercation, Mr. Rosario drove away to his home in Newark, N.J.

Either Lt. Carrillo or Ms. Lee called the Belleville police, and at about 12:01 a.m. on September 10, 2006, Belleville Police Officers Glenn Zadroga and Kyle Kondreck arrived at the Belleville home. Officer Kondreck took a statement from Ms. Hernandez. As reported by Officer Kondreck, Ms. Hernandez told him the following: "[Mr. Rosario] then said to [Ms. Hernandez] 'I don't give a shit about you, I'll burn your house down.'" *See* Incident Report of Officer Kondreck, at 1; Deposition of Kyle Kondreck, at 13:17-14-13. According to Officer Kondreck, Ms. Hernandez made this statement while talking alone to Officer Kondreck, separated from Ms. Lee and Lt. Carrillo. Officer Kondreck further testified that, while providing the statement, Ms. Hernandez was "crying . . . upset . . . shaking." Deposition of Kyle Kondreck, at 13:17-14-13. Since Ms. Hernandez is unavailable to testify, Defendants seek to introduce the testimony of Officer Kondreck.

The second issue involves a video tape of Officer Wayne Pugh. On March 12, 2010, over three and a half years after the arrest of Mr. Rosario, Officer Pugh was videotaped kicking a suspect.

Plaintiffs allege that this video is one of several factors relied upon by Wayne S. Fisher to conclude that sufficient evidence exists for a reasonable jury to find that the Newark Police Department had a custom and practice of tolerating excessive force on the part of its police officers. Defendants claim that the video itself is equivocal about Officer Pugh's use of excessive force. Furthermore, Defendants claim that the events in the video are somewhat obscured by a passing car.

## II

1. <u>Plaintiff Mr. Rosario's Alleged Threat</u>

Plaintiffs correctly observe that any attempt to introduce Mr. Rosario's alleged threat creates a "double hearsay" problem. Double hearsay, or a hearsay statement nested within another hearsay statement, can only be included in evidence "if each part of the combined statements conforms with an exception to the hearsay rule . . . ." Fed.R.Evid. 805; 2 McCormick on Evidence 412-14 (6th ed., 2006).

At the first level of this multiple hearsay problem, Mr. Rosario allegedly threatened Ms. Hernandez. Since this is an out-of-court statement that Defendants intend to offer to prove that Mr. Rosario threatened Ms. Hernandez, it falls under the broad definition of hearsay. *See* Fed.R.Evid. 801(c) (defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). However, certain out of court statements are not subject to the hearsay rule. *See e.g.,* Fed.R.Evid. 803(2); 804(b)(3). Statements made by one party and offered against that party by a party-opponent are outside of the definition of hearsay. Fed.R.Evid.801(d)(2); *see also* 2 McCormick 178-82. Thus, if Ms. Hernandez was an available declarant, the Defendants could call her to testify to Mr. Rosario's alleged threat and Ms. Hernandez's testimony could be offered as proof that Mr. Rosario threatened Ms.

3

Hernandez.

At the second level of this multiple hearsay problem, Ms. Hernandez allegedly reported Mr. Rosario's threat to Belleville Police Officer Kyle Kondrick. Defendants argue that this statement is an "excited utterance," and is therefore beyond the reach of the hearsay rule. Defendant's Brief, at 6-7; see also Fed.R.Evid. 803(2) (defining "excited utterance" as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."). To qualify as an "excited utterance" there must be: "(I) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had opportunity to observe personally the events; and (iv) a statement made before there has been time to reflect and fabricate." United States v. Brown, 254 F.3d 454, 458 (3d Cir.2001) (citing United States v. Mitchell, 145 F.3d 572, 576 (3d Cir.1998); Miller v. Keating, 754 F.2d 507 (3d Cir.1985)). Importantly, when determining if the declarant had sufficient time to reflect and fabricate, there is no bright line time requirement; all that is required is that the excitement under which the declarant made the statement was caused by the startling event. Brown, 254 F.3d at 460.

In the instant case, the altercation between Mr. Rosario and Ms. Hernandez and the subsequent statement by Ms. Hernandez to Officer Kondrick easily satisfy the first three elements of the excited utterance hearsay exception.[1] Furthermore, Defendants have provided sufficient information to prove that Ms. Hernandez made the alleged statement to Officer Kondrick while still

---

[1] Addressing briefly the first element of this exception, the effect of the event on the declarant is central in determining whether or not the event was sufficiently startling. See 2 McCormick 256; J. Weinstein, Evidence ¶ 803.04[2][b] (1999) (instructing that "[t]he test . . . should not be whether the judge considers the matter routine and unexciting, but whether the declarant probably did."). Here, Defendants have adduced sufficient proof that the declarant was excited by the altercation.

4

in the thrall of a startling event. *See* Defendants Brief ¶ 9 ("[Declarant] was crying, she was upset, she was shaking."). Despite Plaintiff's argument during oral argument that the lapse of time between the altercation and the statement was long enough to allow for reflection and fabrication, Ms. Hernandez's statement to Officer Kondrick qualifies as an excited utterance.

Plaintiffs level one final attack against the inclusion of the statements, arguing that, even if the alleged threat survives the hearsay rule, its probative value is outweighed by its prejudicial content. *See* Plaintiffs' Letter, at 6-11; *see also* Fed.R.Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, . . . ."). Plaintiffs' argument is premised on a line of cases dealing with hearsay statements that induce criminal investigation. *See* Plaintiffs' Letter, at 7-11 (citing *State v Bankston,* 307 A.2d 65, 265-69 (N.J. 1973)). The basic fact pattern that emerges in this line of cases involves an officer initiating an investigation as a result of a hearsay statement, usually from a complaint or police report. *See e.g.*, *Bankston*, 307 A.2d at 67 (police officer's conversation with informant); *see also United States v. Lopez*, 340 F.3d 169, 174-175 (3d. Cir. 2003) (same); *United States v. Merserve*, 271 F.3d 314, 319 (1st Cir. 2001) (police officer's reliance on the description of a robber). Under this line of cases, an officer may provide their reason for beginning an investigation. *See e.g.*, *Lopez*, 340 F.3d at 176-77; *Bankston*, 307 A.2d at 68; *see also* 2 McCormick 136 ("[O]fficers should not be put in the misleading position of appearing to have happened upon the scene and therefore should be entitled to provide some explanation for their presence and conduct."). However, an officer may not reveal the precise details of any hearsay statement that induced the investigation. *See Lopez*, 340 F.3d at 176-77; *Merserve*, 271 F.3d at 319-20; *Bankston*, 307 A.2d at 68. In this line of cases, courts have reasoned that, generally, the details of such hearsay statements are very prejudicial and contain little

5

probative value. *See Lopez*, 340 F.3d at 176-77; *Merserve*, 271 F.3d at 319-20; *Bankston*, 307 A.2d at 68.

While these cases are factually similar to the case at bar, their rationale is inapposite. In the aforementioned line of cases, each out-of-court statement is offered to show the effect of the statement on the listener. *See e.g., Lopez*, 340 F.3d at 176 (prosecution sought to establish the factual context of an officer's search); *Merserve*, 271 F.3d at 320 (prosecution sought to establish investigating officer's motivation); *Bankston*, 307 A.2d at 69 (prosecution offered testimony to explain officers' reason for being in a specific location). When an out-of-court statement is offered to show its effect on a listener, as opposed to prove the truth of the matter asserted, it is, by definition, not hearsay. *See* Fed.R.Evid. 801(d) (defining hearsay to include only those statements offered "to prove the truth of the matter asserted"). However, such non-hearsay statements have little probative value, *see e.g., Lopez*, 340 F.3d at 176-77; *Merserve*, 271 F.3d at 319-20, so the admissibility of such statements may be curtailed by operation of Rule 403. *See* Fed.R.Evid. 403 (allowing evidence to be excluded when "its probative value is substantially outweighed by the danger of unfair prejudice").[2]

In the case at issue, testimonial evidence of Mr. Rosario's alleged threat is subject to recognized exceptions and exclusions to the general prohibition against out of court statements. Because of these exceptions and exclusions, testimonial evidence of Mr. Rosario's alleged threat is more probative than those statements referenced in the aforementioned line of cases, and the

---

[2] In the line of cases dealing with hearsay statements that induce criminal investigation, courts generally limit officers to testifying that their motivation is founded "upon information received." *See e.g.*, *Lopez*, 340 F.3d at 176-77; *Bankston*, 307 A.2d at 69.

probative value of the testimonial evidence substantially outweighs any danger of unfair prejudice. Thus, testimonial evidence by Officer Kondreck of Mr. Rosario's alleged threat is admissible.

    2.    <u>The Video of Officer Pugh</u>

Plaintiffs argue that the video of Officer Pugh should be admitted in evidence. *See* <u>Plaintiffs' Brief</u>, at 12 (citing *Beck v. City of Pittsburgh*, 89 F.3d 966 (3d Cir. 1996)). However, the determination of admissibility does not hang solely on relevance. *See* Fed.R.Evid. 403. Under Rule 403 of the Federal Rules of Evidence, relevant evidence "may be excluded if its probative value is substantially outweighed by . . . confusion of the issues, . . . or needless presentation of cumulative evidence." Thus, "Rule 403 recognizes that a cost/benefit analysis must be employed to determine whether or not to admit evidence; relevance alone does not ensure its admissibility." *Coleman v. Home Depot, Inc.*, 3006 F.3d 1333, 1343 (3d Cir. 2002). This cost/benefit analysis is to be conducted by the trial judge. *See Hamling v. United States*, 418 U.S. 87 (1974); *Veloso v. Western Bedding Supply Co., Inc.*, 281 F.Supp.2d 743 (D.N.J. 2003).

The video of Officer Pugh is far removed from the epicenter of the case. Most of the facts in dispute deal with either the altercation between Mr. Rosario and Ms. Hernandez or the arrest of Mr. Rosario. *See* <u>Pre-Trail Order</u>, at 3-19. The video of Officer Pugh deals with an arrest that occurred three-and-half years after Mr. Rosario's arrest. *See* <u>Defendants' Brief</u>, at 8. Furthermore, the video of Officer Pugh embroils a broad group of participants who are far removed from the facts at issue. Additionally, in Plaintiffs' request to admit the Pugh Video, Plaintiff states that Professor Fisher considered the video, along with the additional data, in forming his conclusion that the Newark Police Department had a custom and practice of tolerating excessive force on the part of its police officers. *See* <u>Plaintiffs' Brief</u>, at 11.

Since the Pugh Video merely supports Professor Fisher's findings and since the video presents a substantial possibility of confusing the factual issues, the video is excluded from evidence. Note, however, that Professor Fisher may reference the video in his testimony. Fed.R.Evid.703.

### III.

This Court has reviewed all submissions and heard oral argument. For the reasons set forth in the above Memorandum,

IT IS on this 13th day of October 2011,

ORDERED that Defendants' Motion in Limine [Docket #73] is granted.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.
